IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KHALID ABDULLAH**, | : | CIVIL ACTION NO. 1:05-CV-1135 |
| **Plaintiff** | : | (Judge Conner) |
| v. | : | |
| **ANTHONY FETROW**, et al., | : | |
| **Defendants** | : | |

**MEMORANDUM**

Presently before the court is a motion (Doc. 21), filed by defendants Anthony Fetrow ("Fetrow"), Mark L. Whitman ("Whitman"), and York City Police Department ("Police Department"), to dismiss the claims of plaintiff, Khalid Abdullah ("Abdullah"). For the reasons that follow, the motion will be granted in part and denied in part.

**I.   Statement of Facts**[1]

Abdullah is an "African-American, homosexual, disabled" male residing in York City, Pennsylvania. (Doc. 18 ¶ 6.) A prior gunshot victim, Abdullah suffers from post T12-L1 laminectomy and decompression of the conus medullaris, partial

---

[1] In accordance with the standard of review for a motion to dismiss, the court will present the facts as alleged in plaintiff's complaint. See FED. R. CIV. P. 12(b)(6); Empire Kosher Poultry, Inc. v. United Food & Comm'l Workers Health & Welfare Fund of N.E. Pa., 285 F. Supp. 2d 573, 577 (M.D. Pa. 2003). The statements contained herein reflect neither the findings of the trier of fact nor the opinion of the court as to the reasonableness of the allegations of the complaint.

paralysis in his legs, depression, and bowel and urinary incontinence for which he must wear an adult diaper. (Doc. 18 ¶¶ 15, 16.)

Fetrow is employed as a police officer with the York City Police Department. (Doc. 18 ¶ 7.) In September 2002, Fetrow was contacted by Abdullah's sister, who reported that Abdullah was using her social security number to open several lines of credit and purchase various items. (Doc. 18 ¶ 10.) In June 2003 Fetrow obtained a warrant to search, *inter alia*, Abdullah's apartment and garage for a vehicle and certain credits cards allegedly acquired by Abdullah through the unlawful use of his sister's social security number. (Doc. 18 ¶ 13; Doc. 18, attach. 1.)

On June 4, 2003, Adbullah, while wearing an adult diaper and in bed with his life partner, was startled when Fetrow and other officers, unexpectedly and without knocking, entered Abdullah's apartment using a key obtained from the landlord. (Doc. 18 ¶¶ 12, 14-16.) Upon seeing Abdullah and his life partner in bed, Fetrow and unknown officers allegedly called Abdullah a "little baby faggot" and refused to allow Abdullah to dress. (Doc. 18 ¶ 16-17.) According to the complaint, the officers did not allow Abdullah to explain that his use of his sister's social security number was a mistake. Instead, they proceeded to conduct a search and to seize Abdullah's vehicle, documents relating to the financing of the vehicle, and various credit cards and credit card statements. (Doc. 18 ¶¶ 24, 27; Doc. 18, attach. 2.)

Fetrow then placed Abdullah into custody. Abdullah relayed that he suffered from a disability and requested that the officers handcuff his hands in front of his

body. (Doc. 18 ¶ 21.) Fetrow refused, and the subsequent handcuffing of Abdullah's hands behind his back purportedly caused Abdullah pain and injury. (Doc. 18 ¶ 21.) The officers then transported Abdullah to the police station, and along the way allegedly questioned him about his homosexual lifestyle, the specifics of his relationship with his life partner, and why Abdullah did not like women. (Doc. 18 ¶ 18.)

Upon arriving at the police station, Abdullah requested that he be afforded a cell with a toilet to accommodate his disability. (Doc. 18 ¶ 22.) Fetrow refused, handcuffed Abdullah to a bench, and instructed him to yell for the officer if he needed to use the bathroom. (Doc. 18 ¶ 22.) Abdullah was allegedly handcuffed to the bench for one and a half hours. (Doc. 18 ¶ 23.) At some point he had to use the bathroom, and yelled for over twenty minutes before officers responded. (Doc. 18 ¶ 23.)

Fetrow subsequently charged Abdullah with identity theft and access device fraud pursuant to 18 PA. CON. STAT. §§ 4106, 4120. (Doc. 18 ¶ 25.) On October 30, 2003, the charges were dismissed by the prosecutor for lack of evidence. (Doc. 18 ¶ 20.)

The instant action was commenced on June 6, 2005. (See Doc. 1.) An amended complaint (Doc. 18) was filed on September 1, 2005, naming Fetrow in his individual capacity, York City Police Commissioner Whitman in his official capacity, and the Police Department as defendants. (See Doc. 18.) The search

3

warrant, affidavit of probable cause, inventory list of items seized during the search, and state-court order dismissing the charges against Abdullah were appended to the amended complaint. (<u>See</u> Doc. 18.)

The amended complaint sets forth claims pursuant to 42 U.S.C. § 1983, for failure to train and supervise, and for deliberate indifference to, and violations of, Abdullah's First, Fifth, Fourth, and Fourteenth Amendment rights. (Doc. 18 at 1, 7-8, 10.) Specifically, the pleading alleges that Whitman and the Police Department failed to train and supervise Fetrow and the other officers "in the fundamentals of arrest procedure and matters of sensitivity when dealing with a person with a disability and with cultural and social differences," resulting in a deliberate indifference to the rights "of the citizens of York City." (Doc. 18 ¶¶ 37, 39-40.) The amended complaint avers that Whitman and the Police Department should have known of a history of Fetrow's "bias," "misbehavior," and "mistreating persons who are culturally and socially different." (Doc. 18 ¶ 41.) It states that the Police Department has a deliberately indifferent custom or policy that shielded Fetrow and other officers from citizens' complaints, of acquiescing to Fetrow's and others' unconstitutional practices, and of inadequately disciplining officers who violate citizens' rights. (Doc. 18 ¶¶ 46-49.) The amended complaint also alleges that Fetrow maliciously prosecuted Abdullah (Doc. 18 ¶¶ 51-52), and sets forth the state law claims of malicious abuse of process, assault and battery, intentional infliction of emotional distress, and "harassment." (Doc. 18 at 9-12.) The pleading requests

compensatory and punitive damages in excess of $300,000, attorneys' fees and costs, and "any other fair and equitable remedy." (Doc. 18 ¶ 13.)

On September 16, 2005, defendants filed the instant motion to dismiss. (See Doc. 21.) Defendants argue that all claims against Whitman in his official capacity should be dismissed as they merge with the claims against the Police Department, and that the amended complaint does not set forth sufficient facts for First, Fourth, or Fifth Amendment claims, a malicious prosecution claim, or an abuse of process or harassment claim. (See Doc. 22 at 9.) Defendants further aver that any claims of discrimination based upon Abdullah's homosexuality should be dismissed because sexual orientation is not a "suspect class," and that defendants are officially immune from Abdullah's state law claims.

## II. **Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of claims that fail to assert a basis upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In the context of a motion to dismiss under Rule 12(b)(6), the court must accept as true all of the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom. Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000) (citing Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)). Although the court is generally limited in its review to the face of the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran &

Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice pleading rules do not require plaintiffs to allege affirmatively every aspect of their claims, but only to present sufficient facts to allow the opposing party to conduct discovery and prepare a defense. See FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Thus, courts should not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id.; see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002). Under this liberal pleading policy, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

**III.  Discussion**

  **A.  Constitutional Claims**

Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

6

>rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id. Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a claim under this section, the plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

In the instant matter, it is undisputed that the alleged actions of Fetrow, Whitman, and the Police Department were "under color of state law" and hence potentially subject to § 1983 liability. Accordingly, the court will review the amended complaint to determine whether it avers that these defendants deprived Abdullah of a constitutional right.

### 1. Liability of Police Commissioner in Official Capacity

Defendants argue that the claims asserted against Whitman in his official capacity merge with those against the Police Department, and hence official capacity claims against Whitman should be dismissed. The court agrees.

While a supervisor or municipality may be liable under § 1983 for its failure to adequately train an offending officer, see City of Canton v. Harris, 489 U.S. 378, 388 (1989); Monnel v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978); Doby v. DeCrescenzo, 1714 F.3d 858, 867 (3d Cir. 1999), a judgment against an

7

official in his or her official capacity is a judgment against the entity that the official represents, see Brandon v. Holt, 469 U.S. 464, 471 (1985); Monell, 436 U.S. at 690 (stating that official capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent"); Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988) (stating that claims against defendants in their official capacities "are only a duplication of the counts asserted against the [minicipality] itself").  Hence, claims against an official in his or her official capacity are redundant and should be dismissed.  See Crane v. Cumberland County, Pa., No. 99-CV-1798, 2000 WL 34567277, at *3 (M.D. Pa. June 16, 2000), aff'd 64 F. App'x 838 (3d Cir. 2003); Williams v. Lower merion Tonwship, No. 94-CV-6863, 1995 WL 461246, at *3 (E.D. Pa. Aug. 2, 1995); Yaw v. N. Wales Police Dept., No. 92-1736, 1992 WL 172590, at *4 (E.D. Pa. July 13, 1992); see also Brown v. Grabowski, 922 F.2d 1097, 1105 (3d Cir. 1990) (stating that municipality is "real party in interest" with respect to claims against police chief in official capacity); Melvin v. Nickolopoulos, 864 F.2d 301, 305 (3d Cir. 1988) (noting the "nominal difference" between naming as defendants the parole board and members of the parole board in their official capacities); cf. Greggory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988) ("Punitive damages cannot be recovered from defendants in their official capacities."); Ellis v. Horn, 37 F. App'x 38, 39 (3d Cir. 2002) (same).  Accordingly, all claims against defendant Whitman in his official capacity will be dismissed.

### 2. First and Fifth Amendment Claims

Defendants argue that the complaint does not set forth facts sufficient for a First or Fifth Amendment violation. (See Doc. 22 at 10). Abdullah counters that the complaint sets forth claims for First Amendment freedom of association violations, and for a Fifth Amendment taking of his vehicle without due process of law and just compensation. (Doc. 23 at 10-11.)

The First Amendment affords protections to an individual's right of "intimate association." See Angstadt v. Midd-West Sch. Dist., 377 F.3d 338, 343-44 (3d Cir. 2004). In this context, "certain intimate human relationships" are deemed fundamental elements of personal liberty. Roberts v. Jaycees, 468 U.S. 609, 617-18 (1984); Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh, 229 F.3d 435, (3d Cir. 2000). "Protecting these relationships from unwarranted state interference . . . safeguards the ability independently to define one's identity that is central to any concept of liberty." Roberts, 468 U.S. at 619.

In the matter *sub judice*, the amended complaint does not aver facts demonstrating a violation of Abdullah's right of intimate association. It merely states that Fetrow and other officers made unkind remarks to Abdullah regarding his sexuality, and asked Abdullah inappropriate questions. (Doc. 18 ¶¶ 17, 18.) It

9

does not, however, aver that the officers hindered, or even attempted to hinder, Abdullah's right of intimate association.[2]  Cf. Pi Lambda Phi, 229 F.3d at 444-47.

With respect to Abdullah's Fifth Amendment claim, that right proscribes government taking of private property without just compensation, and is made applicable to the states through the Fourteenth Amendment.  See Cowell v. Palmer Township, 263 F.3d 286, 290 (3d Cir. 2001); see also Gagliardi v. Flint, 564 F.2d 112, 122 n.6 (3d Cir. 1977).  To prevail on such a claim a plaintiff must demonstrate that a liberty or property interest was taken in a procedurally deficient manner.  Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71 (1972); Henry v. Dept. of Correc., 131 F. App'x. 847, 848 (3d Cir. 2005).

In the instant matter, Abdullah alleges that the defendants seized his property, including his vehicle, causing him "undue hardships, including financial and a decreased standard of living."  (Doc. 18 ¶¶ 27-28.)  A review of the search warrant and inventory list reflects that Fetrow and the other officers were authorized to seize Abdullah's property—including the vehicle at issue.  (Doc. 18 ¶ 28; Doc. 18, attach. 2.)  The amended complaint does not aver that the warrant was deficient in any manner, or that Fetrow or any other officer made false statements or omissions to obtain the warrant, or that the officers' reliance on that

---

[2] The extent to which state actions may infringe on an individual's sexual orientation is a question more appropriately considered under the Fourteenth Amendment Due Process Clause, rather than the First Amendment.  See Lawrence v. Texas, 539 U.S. 558, 564 (2003).

10

warrant was unreasonable.  See Franks v. Delaware, 438 U.S. 154, 171 (1978); U.S. v. $92,422.57, 307 F.3d 137, 144 (3d Cir. 2002); Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997).  However, the complaint does aver that the charges against Abdullah were dropped for lack of evidence, and, arguably, items that were seized should have been returned.  Accordingly, defendants' motion to dismiss Abdullah's Fifth Amendment claim will be denied.

### 3. Malicious Prosecution

Defendants contend that Abdullah's malicious prosecution claim fails because the order dismissing the charges against Abdullah does not indicate that Abdullah was innocent.  (Doc. 22 at 11.)

In a § 1983 context, a claim of malicious prosecution requires a plaintiff to prove that (1) the defendants initiated a criminal proceeding, 2) the criminal proceeding ended in plaintiff's favor, (3) the proceeding was initiated without probable cause, (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice, and (5) the plaintiff suffered deprivation of liberty consistent with the concept of a seizure as a consequence of a legal proceeding.  Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003); see also Marable v. West Pottsgrove Township, No. 05-3081, 2006 WL 1024578, at *6 (3d Cir. Apr. 19, 2006).  A favorable termination, for purposes of a malicious prosecution claim, is one that "indicate[s] the innocence of the accused."  RESTATEMENT (SECOND) OF TORTS § 660 cmt. a (1976), quoted with approval in Hilfirty v. Shipman, 91 F.3d 573,

580-81 (3d Cir. 1996).  The "deprivation of a liberty interest" element requires, at a minimum, that the plaintiff be obligated to appear in court by reason of the charges.  See Roskos v. Sugarloaf Twp., 295 F. Supp. 2d 480, 484-87 (M.D. Pa. 2003).

In the instant matter, the complaint avers that the defendants intitiated criminal proceedings against Abdullah, that Abdullah suffered a deprivation of his liberty interests because of these proceedings, and that the proceedings terminated in Abdullah's favor.  However, the warrant demonstrates that Fetrow and the other officers possessed probable cause to effectuate Abfullah's seizure.  The complaint does not challenge the validity of the warrant or the affidavit in support thereof, see Franks v. Delaware, 438 U.S. 154, 171 (1978); U.S. v. $92,422.57, 307 F.3d 137, 144 (3d Cir. 2002); Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997), and hence the pleading does not demonstrate that the officers lacked probable cause.  Accordingly, defendants' motion to dismiss the malicious prosecution claim will be granted, without prejudice to plaintiff's right to file a second amended complaint averring facts sufficient to support this claim.

### 4. Fourth Amendment Search and Seizure

Defendants argue that Abdullah's Fourth Amendment search and seizure claims must be dismissed because the officers acted pursuant to a valid warrant.  (Doc. 22 at 12-13.)  However, the Fourth Amendment also requires that officers knock and announce their presence before making an entry into a residence.  See Richards v. Wisconsin, 520 U.S. 385, 389-93 (1997); Kornegay v. Cottingham, 120

F.3d 392, 396 (3d Cir. 1997). The amended complaint avers that the officers did not knock before entering Abdullah's apartment. Accordingly, the pleading sets forth sufficient facts for a Fourth Amendment claim, and defendant's motion to dismiss this claim will be denied.

### 5. False Arrest

The complaint also sets forth a claim for false arrest.[3] A § 1983 claim for false arrest lies where arresting officers acted without probable cause to effectuate the arrest. See Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988). It does not matter whether the individual arrested actually committed a crime. See id. As set forth above, the complaint does not challenge the validity of the warrant or affidavit of probable cause. See Franks, 438 U.S. at 171; $92,422.57, 307 F.3d at 144; Sherwood, 113 F.3d at 399. Accordingly, the officers are presumed to have acted with probable cause, and defendants' motion to dismiss the false arrest claim will be granted, without prejudice to plaintiff's right to file a second amended complaint averring facts sufficient to support this claim.

---

[3] Defendants initially conceded that the amended complaint sets forth a valid Fourth Amendment claim for false arrest. (See Doc. 22 at 2 n.1.) Thereafter, defendants asserted the defense of statutory immunity pursuant to Pennsylvania's Political Subdivision Tort Claims Act, 42 PA. CON. STAT. §§ 8541-8550 (see Doc. 24 at7). Irrespective of defendants' vacillation, plaintiff clarified in his opposition brief that his false arrest claim arises under § 1983 (see Doc. 23 at 16 (indicating which claims are brought pursuant to state law)).

13

### 6. Sexual Orientation Claims

Defendants contend that any claims of discrimination based upon Abdullah's homosexuality should be dismissed because sexual orientation is not a "suspect class." (Doc. 22 at 10.) While neither side has adequately briefed this issue, the court liberally construes the complaint to include the allegation that Fetrow filed charges against Abdullah because of Abdullah's lifestyle. (See Doc. 18 ¶ 52(a).) The Fourteenth Amendment forbids punishment based upon status, rather than conduct. See Robinson v. California, 370 U.S. 660 (1962); Sterling v. Borough of Minersville, 232 F.3d 190, 195 (3d Cir. 2000). Accordingly, Abdullah's "sexual orientation" may prove relevant in these proceedings, and defendants' motion to dismiss such claims will be denied.

### B. State Law Claims

The amended complaint sets forth state law claims for malicious abuse of process, assault and battery, intentional infliction of emotional distress, and "harassment." (See Doc. 18; see also Doc. 23 at 16.) Although defendants contend that they are immune from these claims pursuant to Pennsylvania's Political Subdivision Tort Claims Act, 42 PA. CON. STAT. §§ 8541-8550, such immunity does not extend to intentional torts. See Lancie v. Giles, 572 A.2d 827, 830-31 (Pa. Commw. Ct. 1990); Schnupp v. Port Auth. of Allegheny County, 710 A.2d 1235, 1238-39 (Pa. Commw. Ct. 1998); Yaw, 1992 WL 172590, at *4; Matijkiw v. County of Del., 1994 WL 533904 (E.D. Pa. Sept. 30, 1994); see also 42 PA. CON. STAT. § 8550

14

(excluding acts of "willful misconduct" from immunity).  Accordingly, the court will review these claims *seriatim*.

With respect to the claim of malicious abuse of process, an abuse of process is a "perversion" of legal process, one that is used by a party "primarily to accomplish a purpose for which the process was not designed." Gen'l Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 304 (3d Cir. 2003).  A plaintiff asserting an abuse of process claim must demonstrate that the defendant used a legal process against the plaintiff in a way that constituted a perversion of that process and caused harm to the plaintiff.  Id. at 304.  Courts must examine the legal process used and determine whether it was used primarily "to benefit someone in achieving a purpose which is not the authorized goal of the procedure in question."  Id., quoting Werner v. Plater-Zyberk, 799 A.2d 776, 785 (Pa. Super. Ct. 2002).  A common example of abuse of process is "blackmail by means of arrest or criminal prosecution."  Russoli v. Salisbury Township, 126 F. Supp. 2d 821, 838-41 (E.D. Pa. 2000) (citing Bristow, 80 F. Supp. 2d at 431).

In the matter *sub judice*, the amended complaint avers that Fetrow unnecessarily filed criminal charges against Abdullah.  (See Doc. 18 ¶ 52(a).)  Although the officers acted pursuant to a presumptively valid warrant, that they possessed probable cause is not a defense to this claim.  See Shiner v. Moriarty, 706 A.2d 1228, 1236-37 (Pa. Super. Ct. 1998) (stating that probable cause is not an element of abuse of process claim); see also Weiss v. Equibank, 460 A.2d 271, 276

(Pa. Super. Ct. 1983) ("In actions for malicious abuse of process the original issuance of the process was justified but the process itself was put to an illegal use."). Accordingly, defendants' motion to dismiss the abuse of process claim will be denied.

The amended complaint also sufficiently sets forth a claim for assault and battery. Under Pennsylvania law, the tort of "assault" is defined as "an intentional attempt by force to do any injury to the person of another," and a "battery" is the completion of the assault, "though in ever so small a degree[] upon the person." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994) (quoting Cohen v. Lit Bros., 70 A.2d 419, 421 (Pa. Super. Ct. 1950). Although an officer may use reasonable force to effectuate a lawful arrest, "reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery." Id. The exact extent of Abdullah's disabilities are not known, however, a trier of fact could determine that handcuffing Abdullah's wrists behind his back was an unreasonable use of force in light of that disability. Accordingly, defendants' motion to dismiss the assault and battery claim will be denied.

A successful claim of intentional infliction of emotional distress must demonstrate: (1) the conduct complained of was extreme and outrageous, (2) the conduct was intended, (3) the conduct caused emotional distress, and (4) the distress was severe. See Williams v. Guzzardi, 875 F.2d 46, 52 (3d Cir. 1989); Silver v. Mendel, 894 F.2d 598, 606 n.16 (3d Cir. 1990). The amended complaint avers that

16

Fetrow was wearing an adult diaper when the officers made their entry into his apartment, and that he was not permitted to get dressed. It alleges that the officers refused to accomodate his disability, constrained his hands in such a manner as to cause severe pain, and then transported Abdullah—presumably still in an adult diaper—to the police station where he was handcuffed to bench and refused access to a toilet for a prolonged period of time. The amended complaint further alleges that Abdullah suffered severe distress because of defendants' actions. While the extent of Abdullah's disability is not known, these facts arguably demonstrate sufficiently outrageous conduct for an intentional infliction of emotional distress claim.

Finally, there does not exist a cause of action for "harassment" under Pennsylvania law. See Sobel v. Wingard, 531 A.2d 520, 522-23 (Pa. Super. Ct. 1987); DeAngelo v. Fortney, 515 A.2d 594, 596 (Pa. Super. Ct. 1986); Waye v. First Citizen's Nat'l Bank, 846 F. Supp. 310 (M.D. Pa.), aff'd 31 F.3d 1175 (3d Cir. 1994); Wolfoson v. Lewis, 924 F. Supp. 1413, 1420 (E.D. Pa. 1996). Accordingly, this claim will be dismissed.

**IV.   Conclusion**

Because a suit against an individual in her or his official capacity is a suit against the governing authority itself, defendants' motion to dismiss claims against Police Commissioner Whitman in his official capacity will be granted. The amended complaint does not set forth facts sufficient for First Amendment,

17

malicious prosecution, or false arrest claims, and the motion to dismiss will be granted with respect to these claims.  Finally, as Pennsylvania does not recognize a cause of action for "harassment," this claim will also be dismissed.  Defendants' motion to dismiss will otherwise be denied.

An appropriate order will issue.

                                        S/ Christopher C. Conner
                                        CHRISTOPHER C. CONNER
                                        United States District Judge

Dated: May 8, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KHALID ABDULLAH**, | : | CIVIL ACTION NO. 1:05-CV-1135 |
| | : | |
| **Plaintiff** | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **ANTHONY FETROW**, et al., | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 8th day of May, 2006, upon consideration of defendants' motion (Doc. 21) to dismiss, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion to dismiss (Doc. 21) is GRANTED with respect to the claims against defendant Mark L. Whitman in his official capacity, and with respect to First Amendment, malicious prosecution, false arrest, and "harassment" claims.

2. Plaintiff shall be permitted to file, on or before May 15, 2006, a second-amended complaint setting forth with specificity the facts and legal theories supporting any claims for malicious prosecution and/or false arrest.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  In the absence of a timely filed second-amended complaint, the matter shall proceed on the remaining claims.

3. The motion to dismiss (Doc. 21) is otherwise DENIED.

 S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge