IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

1:05-CV-01135
(Judge Christopher C. Conner)

_____

KHALID ABDULLAH,
Plaintiff
v.
ANTHONY FETROW, ET AL.,
Defendants

_____

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

Respectfully Submitted By:

Sandra Thompson, Esquire
Attorney for Plaintiff
PA No. 84345

P.O. Box 2361
351 East Princess Street
York, Pennsylvania 17405
717-848-3033
sithompson@msn.com

## <u>TABLE OF CONTENTS</u>

I.     TABLE OF AUTHORITIES.............................................................ii

II.    PROCEDURAL HISTORY.............................................................1

III.   COUNTER-STATEMENT OF MATERIAL FACTS....................2

IV.    COUNTER-QUESTIONS PRESENTED.....................................11

V.     COUNTER-ARGUMENT............................................................12

       A.     THERE IS A GENUINE  ISSUE OF MATERIAL FACTS
              AND MOVING PARTY IS NOT ENTITLED TO
              JUDGMENT....................................................................12

       B.     DEFENDANTS' ARE NOT ENTITLED TO IMMUNITY
              FROM SUIT....................................................................21

VI.    CONCLUSION...........................................................................22

i

# TABLE OF AUTHORITIES

**CASES**:

Anderson v. Liberty Lobby, Inc.,
477 US 242, 255, 106 S.Ct. 2505 (1986)..................................................12

Bd.of Regents of State Coll. v Roth, 408 US 564, 570-71, 92 S. Ct 2701,
33 L.Ed.2d 548 (1972).............................................................................15

Celotex Corp. v. Catrett, 477 US 317, 323 (1986)....................................12

City of Canton, Ohio v. Harris, 489 US 378, 109 S. Ct 1197, 1203
 (1989)......................................................................................................17

Franks v. Delaware, 438 US 154, 165, 98 S. Ct 2674, 57 L.Ed.2d 667
 (1978)......................................................................................................13

Griswald v. Connecticut, 381 US 479, 85 S. Ct 1678, 14 L.Ed2d 510
 (1965)......................................................................................................16

Lytle v. Household Mfg., Inc., 494 US 545, 554-555, 110 S.Ct. 1331
(1990). ....................................................................................................12

Monell v. NY City Dept. Of Soc. Serv., 436 US 658, 690 n 54,
98 S. Ct. 2018, 2035 n 54, 56 L.Ed 2d 611 (1978)............................17-18

Olmsted v. US 277 US 438, 478, 48 S. Ct. 564, 72 L.Ed 944
(1928)......................................................................................................16

Bibby v. Phila Coca Cola Bottling Co., 260 F.3d 257, 262-3
(3rd Cir 2001).........................................................................................17

Cowell v. Palmer Twp., 263 F.3d 286, 290 (3rd Cir 2001).....................16

Doby v. DeCrescenzo, 1714 F.3d 858, 867 (3rd Cir. 1999)....................18

Doe v. Groody, 361 F.3d 232, 237 (3rd Cir. 2004)..................................21

Donahue v. Gavin, 280 F.3rd 371, 379 (3rd Cir 2001)............................19

<u>Dowling v. City of Phila.</u>, 855 F.2d 136, 141 (3rd Cir 1988)....................19

<u>Gen'l Refractories Co. v. Fireman's Fund Co.</u>, 337 F.3d 297, 304
 (3rd Cir 2003).............................................................................20

<u>Kornegay v. Cottingham</u>, 120 F.3d 392, 396 (3rd Cir 1997)...............14, 21

<u>Kreipp v. Tedder</u>, 95 F.3d 1199, 1204 (3rd Cir. 1996)...............................12

<u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137 (3rd Cir. 1995),
 <i>cert denied</i>, 516 US 858,116 S. Ct 165, 133 L.Ed.2d 107 (1995)............12

<u>Nichols v. Azteca Restaurant Enter. Inc.</u>, 256 F.3d 864 (9th Cir 2001).....17

<u>Shea v. Smith</u>, 966 F.2d 127, 130 (3rd Cir. 1992)......................................21

<u>Sherwood v. Mulvihill</u>,  113 F.3d 396 (3rd NJ 1997)...........................13, 14

<u>Sterling v. Borough of Minersville</u>, 232 F.3d 190 (3rd Cir 2000)..............16

<u>Wicker v. Consolidated Rail Corp.</u>, 142 F.3d 690, 696 (3rd Cir),
cert denied, 525 US 1012, 119 S.Ct. 530 (1998)........................................12

<u>Williams v. Guzzardi</u>, 875 F.2d 46, 52 (3rd Cir. 1989). ..........................21

<u>Wilson v. Russo</u>, 212 F.3d 781, 783, 787 (3rd Cir 2000)..........................13

<u>Werner v. Plater-Zyberk</u>, 799 A.2d 1228, 1236-37 (Pa Super 1998)........20

## STATUTES AND OTHER AUTHORITIES:

US Const. Amend IV..................................................................13

Fed.R.Civ.P. 56 ( c) ..................................................................12

Section 1, Article 1 of the Pennsylvania Constitution..............................16

42 U.S.C. § 1983 ..................................................................1, 12

18 Pa C.S.A. § 4106..................................................................7

18 Pa C.S.A. § 4120..................................................................7

iii

## PROCEDURAL HISTORY

Around June 4, 2005, Khalid Abdullah (hereinafter referred to as Plaintiff) initiated a 42 USC § 1983 action against York City Police Detective Anthony Fetrow (hereinafter referred to as "Det. Fetrow"), the York City Police Department, and Mark L. Whitman (hereinafter referred to as "Comm. Whitman"), in his capacity as Police Commissioner for the York City Police Department, and the York City Police Department. Around September 1, 2005, Plaintiff filed an amended complaint. On September 16, 2005, Defendant filed a Second Motion to Dismiss. By order dated May 8, 2006, this Honorable court partially granted Defendant's Second Motion to Dismiss, thereby permanently dismissing Plaintiff's First Amendment claim, state harassment claim and Whitman as an individual Defendant; and granted leave for Plaintiff to amend its complaint on other claims. Around May 15, 2006, Plaintiff filed its Second Amended Complaint. Around November 17, 2006, Defendants filed a Motion for Summary Judgment. After granted extensions, Plaintiff files this Brief in Opposition to Defendants' Motion for Summary Judgment.

1

## COUNTER-STATEMENT OF MATERIAL FACTS[1]

Plaintiff is an African American homosexual disabled male Muslim who believes in Christ. See, *SMF ¶ 1 and 2.* Plaintiff, legally disabled since February 8, 1991, has status post gunshot wound to the chest, status post T12-L1 laminectomy and decompression of the conus medullaris, with paralysis in parts of the legs, with residual metallic fragments in the spine, with bowel and urinary incontinence, and with depression which requires psychotherapy and psychotropic medications. See, *SMF ¶ 3 and 4.* Detective Anthony Fetrow (hereinafter "Det. Fetrow") and York City Police Department (hereinafter "YCPD"), Defendants, are state officials who act under the color of state law. See, *SMF* ¶ 12, 15; *Def. Br.* at pp. 2-3.. YCPD through its Commissioner oversees and establishes the budget, personnel actions, training issues, policies, procedures, and customs for itself. *PL-Exh 6-Whitman* at pp. 5-6.

All of Defendants' acts or omissions were intentional and deliberate, See, *SMF ¶ 46, 116-117, 120-121,* and violated Plaintiff's Constitutionally protected rights as follows:

A.    Fourth Amendment Claims and Fourteenth Amendment Claims:

Around December 1, 2002, Det. Fetrow received a complaint from Kareema Abdullah, Plaintiff's sister, (hereinafter referred to as "Kareema") to investigate whether Plaintiff intentionally used her social security number to obtain credit accounts, See, *SMF ¶ 16 and 17.* The social security numbers of Plaintiff, —/–/4422, and Kareema, —/–/4424, differs by only the one digit. See, *SMF ¶ 18.* Detective Fetrow learned Plaintiff's protected class from Kareema,

---

[1] Plaintiff's Counter-Statement of Material Facts with attached Exhibits are incorporated herein as if stated in full and are hereinafter referred to as "SMF".

and because of Plaintiff's protected class, Det. Fetrow was biased against Plaintiff and concluded that Plaintiff was acting intentionally. *SMF ¶ 17, 43.* Because of Plaintiff's status, Det. Fetrow automatically determined Plaintiff to be guilty of fraud and theft of identity. Id. He told Plaintiff's creditors and landlord that Plaintiff committed a theft and fraud. See, *SMF ¶ 23 and 25.* Because of Plaintiff's status, Det. Fetrow failed to speak to Plaintiff from December 31, 2002 until he arrested Plaintiff on June 4, 2003. See, *SMF ¶ 17, 42, 43; PL-Exh 8.* Det. Fetrow regarded Plaintiff unworthy of the opportunity to explain himself or to correct the misinformation provided to the credit companies which would have avoided the arrest and injury against Plaintiff. See, *SMF ¶ 27, 77, 81-88, 90-95, 98, 99-100.* On June 3, 2003, having already decided to arrest Plaintiff, Det. Fetrow met with Anna Nugent, Plaintiff's landlord, for the second time, the first being May 23, 2003, again informing her that Plaintiff had intentionally performed a fraud. See, *SMF ¶ 47.* Before applying for a search warrant, Det. Fetrow obtained a key to Plaintiff's apartment so that he may secretly enter. Id. On June 4, 2003, Det. Fetrow applied for a search warrant intentionally making false statements in the Affidavit that on June 4, 2003 Plaintiff had "a current outstanding balance of over $1900.00", and that Ford Credit Corp. "has been unsuccessful in getting Abdullah to pay the loan or return the vehicle". In the seventh paragraph of The Affidavit of Probable Cause, Det. Fetrow requested to search for the listed credit cards and vehicle and to search Plaintiff and Anthony Congolesi. It did not request to seize the vehicle. However, the face of the search warrant contained boilerplate language "Identify Items to be Searched for and Seized". See, *SMF ¶ 45-46.* Det. Fetrow intentionally omitted the fact that Plaintiff's own social security number differed from the alleged victim by only one digit, that Plaintiff was paying the accounts, and that Det. Fetrow's information was stale as he had not

3

spoken to Ford, if he did at all, in a couple of months. As by June 4, 2003, Plaintiff's balance, which was payable $117.09/month, was not $1900, but was $1680.89. The District Justice relied solely on Det. Fetrow's intentional falsehood and omissions when he issued the search warrant. See, *SMF ¶ 28-29, 45.* Having received the key the day before and the search warrant on June 4, 2003 around 10:05 am, Det. Fetrow and at least three other officers, including those from the Drug Task Force, secretly entered Plaintiff's apartment and did not knock and announce their presence. See, *SMF ¶ 47-53.* Once the officers entered Plaintiff's bedroom and positioned themselves with weapons drawn around the head of the bed, the foot of the bed and in the hallway outside the bedroom, then they announced their presence by yelling, "where is the drugs!" and we'll start "breaking down the walls". See, *SMF ¶ 11, 54-55.*

Det. Fetrow also violated Plaintiff's right to privacy by placing on the arrest and booking sheet, PL-Exh 17, that Plaintiff had a live-in boyfriend, also naming Anthony Congolesi, which divulged their homosexual status without their consent. Det. Fetrow stated that the form was created to share the information with other persons. PL-Exh 4-Fetrow at pp. 178-180.

B.     Fifth Amendment Claims:

Det. Fetrow used the search warrant to take Plaintiff's vehicle, as Plaintiff was making payments on the vehicle on behalf of Ford, See, *SMF ¶ 28-29.* Without the unauthorized and unintended use of the search warrant, Ford would not have been able to re-take the vehicle from Plaintiff, as Plaintiff was not in default of the contract. Ford had never sent any documents to Plaintiff stating their intent to repossess the vehicle or that Plaintiff was in default before Det. Fetrow seized it. See, *SMF ¶ 38, 106.* On June 4, 2003, Det. Fetrow seized the vehicle and

notified Ford they were authorized to retrieve it, which they did by June 5, 2003. <u>Id.</u> Det. Fetrow acknowledged that he did not have court authority to dispose of the vehicle and he had not been shown any documents by Ford authorizing a repossession. <u>Id.</u> At the preliminary arraignment, District Justice Richard Martin advised Det. Fetrow that he did not intend to give permission for the vehicle to be seized by granting the search warrant, stating further that only pictures of the vehicle were necessary. *PL-Exh-8* at p. 5. After obtaining the vehicle, Ford resold it for $50.00 in a private sale and then sent Plaintiff a bill for the balance due on his contract plus the costs of retrieving the vehicle from Det. Fetrow which totaled $1811.15. <u>Id.</u> When Plaintiff's case was dismissed, the vehicle was not returned to Plaintiff, neither was Plaintiff compensated for the loss value of the vehicle or costs to fulfill the contract.<u>Id.</u>


C.      <u>Deliberate Indifference of York City Police Department</u>

     YCPD 's training issues, policies, procedures, and customs directly affect whether or not the rights of York City, Pennsylvania citizens would be violated or protected. *PL-Exh 6-Whitman* at pp. 5-6. YCPD is directly responsible for training and supervising it's officers. <u>Id.</u> YCPD showed deliberate indifference to protecting the rights of city residents as it refused to change its policies practices or customs to eliminate or minimize the racial profiling, selective prosecutions, verbal and physical abuse that had been ongoing in York City, Pennsylvania toward the African American and Hispanic residents since at least 1968 and had not changed in over thirty years. <u>See</u>, *SMF* ¶ 115, 116. YCPD was well aware of the violations but refused to correct them, instead chose to further disparage the persons who had been victimized by its officers. <u>Id.</u> Leo Cooper, former leader of the York Chapter of the NAACP (hereinafter referred to as Cooper) was

personally involved in addressing the policies, practices and procedures of YCPD with the YCPD Administration, York City Administration, York City residents and other minority leaders from 1998-2001. *PL-Exh 13-Cooper* at pp. 9, 11-13, 17-22, 42, 45.    Through these interactions and his personal experience with assisting residents with their complaints before the YCPD, Cooper learned that the abuses which culminated in 1968 continued and the YCPD knew about them but did not care. Id at pp. 22-23, 32, 34-35, 52-53, 82, 86-87.   Also, showing a deliberate indifference to the rights of African American and Hispanic city residents in light of the history of abuses that existed toward residents, See, *SMF* ¶ 116,  the YCPD maintained a written complaint process which was designed to or had the effect of shielding officers from complaints. See, *SMF* ¶ 114.  The policy requires a complainant to meet with a supervisor before a complaint form is given. A complaint must be written on the particular form or it is not taken.  The supervisor may be one who directly supervises the alleged offending officer.  The purpose of the meeting is to discourage the complainant from reducing his complaint to writing.  The supervisors decide whether a complaint form should be given to a complainant. There is no oversight of the supervisor taking the complaint and the supervisor has not had any special training in taking a complaint from a citizen about a fellow officer.  If a form is not provided then there is no record that a complaint was attempted or made. Id. There are complaints that were made against officers from 2000-2001 that were not recorded by YCPD. *PL-Exh 6- Whitman* at pp. 176-185; *PL-Exh 13-Cooper* at pp. 54, 64-78.  Even when written complaints are accepted, then YCPD had the practice and custom of making an "unfounded" determination in each complaint.  Since the supervisors came up from the ranks and were often friends with the alleged offending officer, the complaints were often covered up. See, *SMF* ¶ 114.   It would be typical of officers to curse at

6

residents, defame them concerning their race, or otherwise make derogatory or demeaning
statements. *PL-Exh 13-Cooper* at pp. 80-81.  Although mistreatment of the public by officers is a
violation of YCPD's general rules of conduct and order, *PL-Exh 6- Whitman* at p. 167-168, no
officers were terminated or disciplined for harassing conduct or false arrest. Id at pp. *169-170;*
*PL-Exh 4-Fetrow* at p. 202, 211; *PL-Exh 13-Cooper* at pp. 40, 82, 110-111,  nor are they re-
trained, See, *SMF* ¶ 120. Since at least 1998, African American leaders have been informing the
YCPD that these policies and practices shields officers because it discourages complaints and
fosters a feeling of mistrust in the community.  The only change made to the policy was around
September 2003 when Comm'r Whitman began his employment with YCPD.  He posted Spanish
and English complaint instructions on the web and at the front desk.  However, the complaint
form could not be obtained from the web, but still must be acquired from a supervisor. See, *SMF*
¶ 114.

        YCPD also further showed a deliberate indifference to the rights of African American city
residents by failing to adequately and sufficiently train and supervise Det. Fetrow. See, *SMF* ¶
117.  The Act 120, Act 180, and other training received by Det. Fetrow was inadequate and
insufficient to prevent the abuses suffered by Plaintiff. See, *SMF* ¶ 5, 7, 11, 17, 46, 47, 55-58, 81-
88, 90-95, 99-100, 103-104, 117, 120.  Det. Fetrow's training mainly centered around tactical
issues. See, *SMF* ¶ 12-14, 120-123.  Det. Fetrow could not remember any other training dealing
with how to respond to culturally or socially diverse persons, believing the last time he received
such training was around 1995.  Id.  Det. Fetrow had a history of violating the rights of other
accused persons causing the criminal complaints in their cases to be like wised dismissed.  In the
case of Charlie Mack, CR-2127 1999, the District Attorney nolle prossed the charges and placed

the costs on the County on January 11, 2000, because of Det. Fetrow's abuses. Charlie Mack is

an African American Muslim male. In the case of Frank Bishop, Jr., CR 788-1999, the

Commonwealth nolle prossed the case on January 11, 2000 after the Honorable John S. Kennedy

found that Det. Fetrow committed state and/or federal constitutional violations against the

Defendant and granted the Defendant's suppression motion.  Frank Bishop, Jr. is an African

American Muslim male. See, *SMF ¶ 120*.   Despite Common Pleas Court Judges finding Det.

Fetrow's actions a violation of a suspect's rights, causing his complaints to be dismissed, YCPD

chose to blame the Judge and/or the District Attorney instead of providing additional training to

or supervision of Det. Fetrow, showing a deliberate indifference to citizen's rights. Id.  Also,

prior complaints were made against Det. Fetrow as a part of the "Redshirts",  who were known

for routinely profiling citizens based on race, for verbally and physically abusing citizens and for

otherwise violating their rights, but YCPD would not train or update Det. Fetrow's training on

proper arrest and investigative procedures or sensitivity to culturally and socially diverse

communities to prevent the abuses as suffered by Plaintiff. See, *SMF ¶ 125*.  No one was actively

supervising Det. Fetrow during his investigation of Plaintiff.  See, *SMF ¶ 119*,


D.     Malicious Prosecution Claims and Malicious Abuse of Process::

On June 4, 2003 Det. Fetrow filed a criminal complaint against Plaintiff for Identity Theft,

18 Pa C.S.A. § 4120, and Access Device Fraud, 18 Pa C.S.A. § 4106. See, *SMF ¶ 55, 77* Det.

Fetrow seized Plaintiff's vehicle and gave it away to Ford.  Plaintiff was required to attend all

court hearings until on October 30, 2003 when his case was dismissed because it lacked probable

cause.  See, *SMF ¶ 17, 45-46, 107, 111, 112*.  Det. Fetrow lacked probable cause when he filed

8

the complaint.  Id. He acted maliciously for the purpose to harass, intimidate, and injure Plaintiff

because of his protected class, See, SMF ¶ 2-4, 17, 42-43, 45-46, 49, 55-58, 72-76, 80-88, 91-95,

98-104, and to take Plaintiff's vehicle and give it to Ford, although Ford was not authorized to

repossess the vehicle and had not begun repossession action, See, SMF ¶ 105-106.


E.    False Arrest Claims:

The preceding facts are incorporated herein.


F.    Assault and Battery:

Det. Fetrow unreasonably used excessive force upon Plaintiff.  Plaintiff advised Det.

Fetrow that he would suffer injury to his lower back because of preexisting health condition and

disability.  See, SMF ¶ 3-4, 72-73  Although Det. Fetrow had already determined Plaintiff was not

a threat, Det. Fetrow intentionally took action knowing that it would injure Plaintiff. See, SMF ¶

61.  He handcuffed Plaintiff in the rear then raised Plaintiff's elbows to his shoulders and escorted

him out the house.  See, SMF ¶ 79, 82-85.   Instead of using the elevator which was located

right next to Plaintiff's apartment, as requested by Plaintiff to reduce injury, Det. Fetrow took

Plaintiff down a narrow flight of stairs while he and another officers continued to hold onto

Plaintiff's arms and caused injury. See, SMF ¶ 91-95.  At the patrol car, Det. Fetrow again

refused to rearrange the handcuffs and placed Plaintiff in his vehicle which had the front seat

pushed all the way back causing Plaintiff to sit in almost a fetal position and injury to Plaintiff's

back.  Plaintiff complained to Det. Fetrow from the time that they left Plaintiff's residence that he

was being injured, but Det. Fetrow intentionally ignored Plaintiff's complaints.  See, SMF ¶ 86-

9

88.  At the police station, Det. Fetrow intentionally handcuffed Plaintiff to a bench when there were open cells with toilets  requiring Plaintiff to be bent over or remain sitting for 45-60 minutes which caused injury because of Plaintiff's disability.  See, SMF ¶ 98-99.  Although he suffered from urine and bowel incontinence and nerve damage, Plaintiff was forced to attempt to hold in his bowels and urine for over twenty minutes as he screamed for help, which caused him pain and distress, to avoid an accident which would have led to further attacks by officers. See, SMF ¶ 4 and 100.  Det. Fetrow knew or should have known that injury could have resulted by his actions because he knew of Plaintiff's disability.

G.     Intentional Infliction of Emotional Distress:

The previously described actions and intentional omissions of Det. Fetrow and YCPD were intentional and were extreme and outrageous conduct.  Their actions caused financial injury to Plaintiff as well as physical injury which manifested into an aggravation of his preexisting condition that had subsided. As a direct and proximate cause of Defendants actions, Plaintiff suffered severe emotional distress which developed into a mood disorder and anxiety where he experienced depression, and paranoia. See, SMF ¶  5-7 and 104.

10

## <u>COUNTER-QUESTIONS PRESENTED</u>

I.    WHETHER THERE IS A GENUINE ISSUE OF MATERIAL FACTS AND MOVING PARTY IS NOT ENTITLED TO JUDGMENT REQUIRING DENIAL OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT?

   **Suggested Answer:   In the affirmative**

II.    WHETHER DEFENDANTS' ARE ENTITLED TO IMMUNITY FROM SUIT?

   **Suggested Answer:   In the negative.**

**COUNTER-ARGUMENT**

I.    THERE IS A GENUINE ISSUE OF MATERIAL FACTS AND MOVING PARTY IS
      NOT ENTITLED TO JUDGMENT REQUIRING DENIAL OF DEFENDANTS'
      MOTION FOR SUMMARY JUDGMENT

As shown by the Counter-statement of Material facts a genuine dispute exists. Summary

Judgment may only be granted when there is no genuine issue of material fact and when the

moving party is entitled to summary judgment as a matter of law.  Fed.R.Civ.P. 56 ( c) and

Celotex Corp. v. Catrett, 477 US 317, 323 (1986). The court must review all evidence and make

all reasonable inferences in favor of the non-moving party. Wicker v. Consolidated Rail Corp.,

142 F.3d 690, 696 (3rd Cir), cert denied, 525 US 1012, 119 S.Ct. 530 (1998). When considering

the record, the reviewing court cannot make credibility determinations or weigh evidence.  See,

Lytle v. Household Mfg., Inc., 494 US 545, 554-555, 110 S.Ct. 1331 (1990).  The "evidence is

such that a reasonable jury could return a verdict for the nonmoving party".  Credibility

determinations, weighing evidence, and drawing inferences remain the jury's.  See, Anderson v.

Liberty Lobby, Inc., 477 US 242, 255, 106 S.Ct. 2505 (1986); See Also, Celotex, 477 US at 323.

The court must disregard all evidence that may seem favorable to the moving party, but that the

jury is not required to believe.

Section 1983 of Title 42 of the U.S.C. offers private citizens a means to redress violations

of federal law by state officials See, 42 USC §1983. To establish a claim under 42 USC §1983,

Plaintiff must show that a "right secured by the Constitution and the laws of the United States"...

were violated by a person acting under color of state law. See, Kreipp v. Tedder, 95 F.3d 1199,

1204 (3rd Cir. 1996),quoting, Mark v. Borough of Hatboro, 51 F.3d 1137 (3rd Cir. 1995), cert

denied, 516 US 858, 116 S. Ct 165, 133 L.Ed.2d 107 (1995).

Plaintiff's federally protected rights were violated under the following:

A.    The Fourth Amendment and Fourteenth Amendment :

The Warrant Clause of the Fourth Amendment to the United States Constitution provides in pertinent part that "no Warrants shall issue but upon probable cause, supported by Oath or affirmation." US Const. Amend IV.  It has been referred to by the Supreme Court as the "bulwark of Fourth Amendment protection." See, Franks v. Delaware, 438 US 154, 165, 98 S. Ct 2674, 57 L.Ed.2d 667 (1978).  Plaintiff has overcome the general presumption that the affidavit of probable cause is valid. He has made a "substantial preliminary showing" that the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause.  Det. Fetrow knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for the warrant; and (2) that such statements or omissions were material, or necessary, to the probable cause determination. See, Franks, 438 US at 171, 98 S. Ct at 2674; See Also, Sherwood v. Mulvihill,  113 F.3d 396 (3rd NJ 1997).  Det. Fetrow's actions were not innocent mistakes. Acting in malice, he recklessly omitted facts that any reasonable person would want to know; and he had obvious reasons to doubt the truth of what he is asserting,  See, Wilson v. Russo, 212 F.3d 781, 783, 787 (3rd Cir 2000).  Det. Fetrow made affirmative misrepresents as well as omissions.  Therefore, the court is required to excise the false statements from the affidavit, as well as  remove the "falsehood created by an omission by supplying the omitted information to the original affidavit." See, Sherwood, 113 F.3d at 400.

When the omitted language is added and the false statements are corrected, then probable cause to believe that contraband or evidence of a crime would be found pursuant to the search

13

warrant is lacking. Existence of probable cause is a question of fact, Defendants Motion for Summary Judgment must be denied, unless the District Court can conclude as a matter of law that the evidence viewed most favorably to plaintiff reasonably would not support a contrary factual finding,  See, Sherwood 113 F.3d at 401.

Defendant argues that Plaintiff waived his Preliminary hearing thereby admitting to probable cause.  As Plaintiff has averred, he simply followed the advice of his Public Defender who had not explained any legal implications of waiving the Preliminary Hearing but merely talked Plaintiff into applying for the ARD Program to "get rid of the charges". Once Plaintiff was denied ARD and pursued to court, the reviewing Judge, the Honorable John H. Chronister of York County Common Pleas Court found that the complaint lacked probable cause, informed the District Attorney and the District Attorney promptly nolle prossed the charges.

Det. Fetrow obtained a key to Plaintiff's residence the day before even the defective search warrant was authorized.  On June 4, 2003, Det. Fetrow used the key to secretly enter the residence, violating the Knock and Announce rule.  The Fourth Amendment also protects a person's right to be secure in his person, house, paper, and effect, against unreasonable searches and seizures.  The knock and announce rule is incorporated in the Fourth Amendment to strike a balance between law enforcement and a person's privacy interest affected by no knock entry. See, Kornegay v. Cottingham, 120 F.3d 392, 396 (3rd Cir 1997). It protects the police officer from being mistaken for an intruder, protects property from being unnecessarily broken, and shows respect for an individual's privacy interest. Police officers are required state their presence and request the doors be opened. Id.  Det. Fetrow cannot justify a 'no-knock' entry.  Therefore, Summary Judgment must be denied.

14

B.     Fifth Amendment Claims:

Det. Fetrow violated Plaintiff's rights to due process, by taking Plaintiff's liberty and property interest in a procedurally deficient manner. See, Bd.of Regents of State Coll. v Roth, 408 US 564, 570-71, 92 S. Ct 2701, 33 L.Ed.2d 548 (1972). Plaintiff's liberty interest was taken pursuant to Det. Fetrow's bias against Plaintiff because of his protected status.  Det. Fetrow entered Plaintiff's home in violation of the Fourth Amendment with a warrant that he knew was defective because he provided false information or omitted material information which negated probable cause. Plaintiff was arrested and required to attend all court hearings from the Preliminary Arraignment to Trial. Det. Fetrow then seized Plaintiff's vehicle although he did not request seizure in his affidavit.  Det. Fetrow used the search warrant process for purposes for which it was not intended, such as to harass and intimidate Plaintiff and to take the vehicle from Plaintiff and give it back to Ford when Plaintiff was satisfying his contract with Ford and Ford had not sought to repossess the vehicle. After seizing the vehicle, Det. Fetrow called Ford authorizing them to pick up the vehicle.  Det. Fetrow admitted he did not follow YCPD's procedures for assisting a civil agency in repossessions.  In such a case he does not physically remove the vehicle but stands by as a peace-keeper after being shown the proper paperwork authorizing repossession.  Det. Fetrow had no legal authorization to seize and dispose of the vehicle. Plaintiff was arrested and his vehicle seized pursuant to a defective search warrant and without probable cause. Det. Fetrow used the search warrant process for purposes for which it was not intended.

Because, Det. Fetrow seized Plaintiff's vehicle and improperly disposed of it, Plaintiff was denied the use of his vehicle without just compensation. Cowell v. Palmer Twp., 263 F.3d 286,

290 (3rd Cir 2001). Also See, Section 1, Article 1 of the Pennsylvania Constitution- individuals

have a right to enjoy their private property and government may only interfere by reasonably

complying with due process requirements.

C.    Fourteenth Amendment

The right to privacy is a  clearly established Constitutionally protected right.  See, Sterling

v. Borough of Minersville, 232 F.3d 190 (3rd Cir 2000), citing, Griswald v. Connecticut, 381 US

479, 85 S. Ct 1678, 14 L.Ed2d 510 (1965), which validated the dissent in Olmsted v. US 277 US

438, 478, 48 S. Ct. 564, 72 L.Ed 944 (1928) who described the right to privacy as "the right to

be let alone-the most comprehensive of rights and the right most valued by civilized men".

Sterling, 232 F.3d at 193. The Sterling court found it repugnant to the right of privacy to force

disclosure without consent of one's same sex relations. Id at 195.  The right is subject to the

balancing test of whether the government has a genuine, legitimate and compelling reason to

disclose.  Id at 196. Sterling further recognized that the Eighth and the Fourteenth Amendment

protected against punishment for status versus conduct. Id. at 195.

Det. Fetrow pursued criminal charges against Plaintiff to punish him for his status, not his

conduct, as shown by the totality of the circumstances, which included defaming, injurying from

an unreasonable use of force, and verbally attacking Plaintiff.   Det. Fetrow knew of Plaintiff's

protected classes as of December 31, 2002 when he met with Plaintiff's sister, Kareema.  Det.

Fetrow did not act with justice in mind, but he sought to punish Plaintiff because of his status.  If

he was acting to seek the truth or justice, then he would have contacted Plaintiff before June 4,

2003 when he decided to arrest Plaintiff.  Det. Fetrow would have given Plaintiff the opportunity

to correct the accounts.  Det. Fetrow's behavior inside the home, toward Plaintiff in transport and

16

at the station all evidence that he was not merely objectively performing his duties. Det. Fetrow disregarded Plaintiff's rights and needs at each opportunity.  He only allowed Plaintiff to put on an adult diaper when Plaintiff after a couple of tries to explain his disability to Det. Fetrow finally crassly stated that if he didn't allow Plaintiff to put on an adult diaper, then he could "shit" in his vehicle.  Plaintiff used 2-3 minutes which was not going to be given to also dress in a shirt and shoes.

Det. Fetrow also violated Plaintiff's right to privacy by placing on the arrest and booking sheet, that Plaintiff had a live-in boyfriend, also naming Anthony Congolesi, which divulged their homosexual status without their consent.  Det. Fetrow stated that the form was created to share the information with other persons. Det. Fetrow also began spreading around the station that Plaintiff was a homosexual who wore a diaper. He and other officers laughed and called Plaintiff a "baby faggot".

Plaintiff was denied equal protection under the law. Det. Fetrow intentionally and knowingly violated Plaintiff's rights by harassing and discriminating against Plaintiff because Plaintiff did not conform to Det. Fetrow's idea of "manhood".  Det. Fetrow violated an established right. See, Bibby v. Phila Coca Cola Bottling Co., 260 F.3d 257, 262-3 (3rd Cir 2001); See Also, Nichols v. Azteca Restaurant Enter. Inc., 256 F.3d 864 (9th Cir 2001)


D.    Deliberate Indifference

A supervisor or municipality may be liable under §1983 for its failure to adequately train or supervise an offending officer. City of Canton v. Harris, 489 US 378, 388 (1989), Monel v. NYC Dept. Of Soc. Serv., 436 US 658, 691-94 (1978), Doby v. DeCrescenzo, 1714 F.3d 858,

867 (3rd Cir. 1999).   Neither Defendant denies that he/it acts as a state official under the color of state law. YCPD created its policies, customs, and practices for YCPD's administrators and employees, although they would be reviewed by the York City Council and City Solicitor.  As explained previously, YCPD's written complaint policy coupled with the unspoken "policy" or "custom" of supervisor's protecting officers from complaints, covering complaints, and refusing to discipline or retrain is the moving force behind Det. Fetrow's constitutional violations of Plaintiff. Since around 1968, YCPD had a history of racial profiling, false arrests, disparate treatment, selective investigations and excessive force which developed into mistrust and disconnect with the African American and Hispanic communities. Because of this history and that the abuses continued even until September 2003 when Comm. Whitman was asked to turn around the Department,  YCPD's failure to train its officers on the proper investigation and arrest procedures of persons with cultural and social differences and with mental and physical disabilities in an effort to prevent bias and discriminatory treatment reflects a "deliberate" or "conscious" choice by the YCPD. YCPD has evidenced that "it doesn't care" about the Ethnic minority community that it is supposed to serve and protect, but its officers are beating them, arresting them without cause, targeting them for arrest, and otherwise verbally abusing them during arrests in an effort to humiliate them. Its failure can be properly thought of as actionable as a City Policy. The lack of training or the inadequate training on this issue, as well as the failure to supervise is a direct and proximate cause of Plaintiff's injuries.   YCPD does not have a policy,  practice, or custom to train its officers on these issues of cultural diversity.  Det. Fetrow did not remember having such training, but believes it could have occurred in 1995.

E.    False Arrest Claims:

      The search warrant was invalid and defective because of the errors and omissions, so the arrest was invalid.  See, Dowling v. City of Phila., 855 F.2d 136, 141 (3rd Cir 1988).

F.    Plaintiff's State Claims:

      Plaintiff has also established a genuine issue of material facts as to its state claims.  As Plaintiff has shown Constitutional violations, by Defendants, the Court should exercise jurisdiction over these claims.

      1.    Malicious Prosecution Claims:

      As previously argued, Det. Fetrow initiated the complaint without probable cause against Plaintiff because of his bias, purposing to take Plaintiff's's car and give it to Ford without court involvement. Det. Fetrow acted maliciously. On October 30, 2003, the court found no probable cause encouraging the District Attorney to nolle pros the case. In finding the case lacked probable cause, the court reviewed the same evidence that Det. Fetrow had when he filed the charges.. Donahue v. Gavin, 280 F.3rd 371, 379 (3rd Cir 2001).  Before the case was dismissed,  Plaintiff was subjected to a seizure and a restraint of his liberty constituting malicious prosecution.

      2.        Malicious Abuse of Process

      Det. Fetrow perverted the legal process of arrest and search procedures and of applying for a warrant.  He used the processes to further his own discriminatory intent and bias and to accomplish a taking of personal property on behalf of a private entity.  Det. Fetrow's seizure of

Plaintiff's vehicle was for the benefit of Ford, which was not the authorized goal of the warrant procedure. Det. Fetrow used the process illegally.   See, Gen'l Refractories Co. v. Fireman's Fund Co., 337 F3d 297, 304 (3rd Cir 2003); Werner v. Plater-Zyberk, 799 A.2d 1228, 1236-37 (Pa Super 1998). A valid warrant is not a defense.

      3.     Assault and Battery:

Plaintiff informed Det. Fetrow of his disability to his back. Det. Fetrow intentionally attempted by force to cause injury to Plaintiff by: handcuffing Plaintiff in the rear, lifting up Plaintiff by arms where his elbows were extended to the rear toward his shoulders, making him walk that way down a flight of stairs with Det. Fetrow being raised further to the rear of Plaintiff, and by placing Plaintiff into the patrolcar still handcuffed to the rear and pushing the front seat all the way back so Plaintiff was crushed in a fetal position. Det. Fetrow acted without a reasonable basis as he already determined Plaintiff was not a threat and Plaintiff's disability presented an extenuating circumstance requiring Det. Fetrow to use the restraining belt he had which secure handcuff Plaintiff in the front.  The Battery, was accomplished in that Plaintiff suffered injury to his hands and lower back. Det. Fetrow also intentionally attempted to cause injury to Plaintiff by handcuffing him to a bench without restroom facilities and leaving Plaintiff for 45-60 minutes knowing that Plaintiff suffered from incontinence and nerve damage and that he would need to use the bathroom.

      4.     Intentional Infliction of Emotional Distress:

20

Defendants acts were extreme and outrageous. They intentionally caused Plaintiff to suffer severe distress such as depression, mood disorder, and anxiety. The harm to Plaintiff was foreseeable and a direct and proximate cause of Defendants' actions. Therefore, Summary Judgment must be denied. See, Williams v. Guzzardi, 875 F.2d 46, 52 (3rd Cir. 1989).

## II.    DEFENDANTS' ARE NOT ENTITLED TO IMMUNITY FROM SUIT

Government officials are only shielded from liability for civil damages in performing discretionary functions generally if their conduct does not violate clearly established constitutional rights known to a reasonable person. See, Kornegay, 120 F.3d at 395, citing, Shea v. Smith, 966 F.2d 127, 130 (3rd Cir. 1992). When clearly established laws are violated, then the immunity is forfeited. See, Doe v. Groody, 361 F.3d 232, 237 (3rd Cir. 2004). Qualified immunity turns on the reasonableness of the officers' belief that their conduct was legal not its legality per se. A reviewing court must ask "whether a reasonable person could have believed the officers actions to be lawful in light of clearly established law and the information he possessed." Id ; Kornegay, 120 F.3d at 395 (Citations omitted). The Court must perform an objective two-step analysis of whether a Constitutional right was violated; and whether the right was clearly established when violated. See, Doe, 361 F.3d 237-238.  The must address whether the action is clear to a reasonable officer that he actions were unlawful in the situation he confronted. Id at 238.

Plaintiff has established that his Constitutional rights  at the time were violated, all were clearly established when violated.  Defendants would reasonably know when they acted that they were violating Plaintiff's rights. Defendants did not have an reasonable excuse in any instance to violate Plaintiff's rights, then violation did not serve an genuine legitimate governmental interest.

21

**CONCLUSION**

Because of the foregoing facts in dispute, arguments and status of the law, Defendants'

Motion for Summary Judgment must be denied allowing the case to proceed to trial.


Respectfully Submitted By:


DATED: December 18, 2006                    s/Sandra Thompson
                                            Sandra Thompson, Esquire
                                            Attorney for Plaintiff
                                            PA No. 84345

                                            P.O. Box 2361
                                            351 East Princess Street
                                            York, Pennsylvania 17405
                                            717-848-3033
                                            sithompson@msn.com


UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

KHALID ABDULLAH,            :   CIVIL ACTION NO. 1-CV-05-1135
    Plaintiff            :
                                  :   (Judge Christopher C. Conner)
         V.            :
                                    :   Jury Trial Demanded
ANTHONY FETROW, et al.       :
    Defendants            :

## <u>CERTIFICATE OF WORD COUNT</u>

I, Sandra Thompson, Esquire, counsel for Plaintiff, do hereby certify that according to the word count feature, this brief contains approximately 4946 words, excluding the Title page, Table of Contents, Table of Authorities, Certificate pages, Headings, Citations, and signature blocks.

Respectfully Submitted:

<u>s/ Sandra Thompson, Esquire</u>
PA ID NO. 84345
Counsel for Plaintiff

351 East Princess Street
P.O. Box 2361
York, Pennsylvania 17405
717-848-3033
sithompson@msn.com

UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

23

KHALID ABDULLAH,              : CIVIL ACTION NO. 1-CV-05-1135
          Plaintiff          :
                             : (Judge Christopher C. Conner)
          V.                 :
                             :   Jury Trial Demanded
ANTHONY FETROW, et al.        :
          Defendants         :

## PROOF OF SERVICE

AND NOW on this 18th day of December, 2006,  here comes Khalid Abdullah,

Plaintiff, by and through his counsel, Sandra Thompson, Esquire, to certify that a true and correct

copy of Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment has been

served by electronic service pursuant to Local Rule 5.7 and Standing Order 03-4, ¶ 12.2 to the

following individuals:

DEVON M. JACOB, ESQUIRE
Email: djacob@laverylaw.com

FRANK J. LAVERY, JR., ESQUIRE
Email: flavery@laverylaw.com
225 Market Street, Suite 304
P.O. Box 1245, Harrisburg, PA 17108-1245
Counsel for Defendants

                              Respectfully Submitted:

                              s/ Sandra Thompson, Esquire
                              PA ID NO. 84345
                              Counsel for Plaintiff
                              351 East Princess Street
                              P.O. Box 2361
                              York, Pennsylvania 17405
                              717-848-3033
                              sithompson@msn.com